IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| STATE OF ALASKA DEPARTMENT OF NATURAL RESOURCES, et al.,<br><br>  Plaintiffs,<br><br>  v.<br><br>UNITED STATES OF AMERICA, et al.<br><br>  Defendants. | Case No. 4:13-cv-00008-RRB |

**JOINT MOTION TO ENTER CONSENT DECREE,
CONFIRM QUIET TITLE ACT DISCLAIMER, AND
ENTER FINAL JUDGMENT**

Plaintiffs State of Alaska Department of Natural Resources and State of Alaska Department of Transportation and Public Facilities (together "the State") and Defendant the United States of America, (collectively "the Parties") hereby move this Court to enter the Consent Decree, confirm the Quiet Title Act Disclaimer, and enter final judgment dismissing the State's Quiet Title Act claim against the United States with prejudice.

I.   Background

In March 2013, the State filed suit against the United States under the Quiet Title Act (QTA), 28 U.S.C. § 2409a, seeking to quiet title to six alleged trails in the Fortymile region near Chicken, Alaska.[1]  ECF No. 1.  Three of the six trails traverse land within the

---

[1] The State also filed suit against private entities who are not party to the Consent Decree.

1

Fortymile River Wild and Scenic River Corridor administered by the Bureau of Land Management (BLM). *See* Ex. 1 to Compl., ECF No. 1. The three trails are the Chicken-to-Franklin Trail, Hutchinson Creek Trail, and the Montana Creek Trail.[2] Am. Compl. ¶¶ 302-311, ECF No. 174. Consistent with the Wild and Scenic Rivers Act (WSRA), 16 U.S.C. §§ 1271-87, the BLM issued a management plan for the Fortymile River in 1983 and has administered the river corridor, including the lands underlying these trails, to preserve and enhance the primitive character, scenery, and habitat in the area. *See* United States' Mot. for J. on Pleadings 9, ECF No. 188. The State asserts that it accepted rights-of-way for the three trails under Revised Statute 2477, 43 U.S.C. § 932 (*repealed* Oct. 21, 1976, with a savings provision).[3] *See* Am. Compl. ¶ 2, ECF No. 174.

In December 2016, the United States moved for judgment on the pleadings arguing that the 12-year statute of limitations for the State's QTA claim began to run when BLM issued its 1983 River Management Plan. ECF No. 188. The Court denied the motion in June 2017. ECF No. 208. The proceedings on the State's QTA claim against the United States were then stayed pending the resolution of the State's condemnation of rights-of-way on the other defendants' properties. ECF No. 214. In November 2018, the Court lifted the stay, and discovery between the State and the United States began. ECF No. 287. After two depositions, multiple document exchanges, and

---

[2] Only these three trails are relevant to the State's claim against the United States.

[3] Congress repealed R.S. 2477 in 1976, when it enacted the Federal Land Policy and Management Act (FLPMA). *Id.* Congress provided that no valid R.S. 2477 rights-of-way existing on the date of FLPMA's enactment would be terminated, but no further rights-of-way could be established pursuant to the repealed R.S. 2477. Pub. L. No. 94-579 § 701(a), 90 Stat. 2743, 2786 (1976).

2

attempts to resolve discovery disputes, the Parties began negotiating an agreement to settle the State's QTA claim against the United States; thus, the Parties sought to stay proceedings.  ECF No. 328.  The Court stayed discovery for the Parties to engage in settlement discussions, and the Parties have since filed successive joint status reports to update the Court on the progress of settlement.  ECF No. 329; *see e.g.*, ECF No. 366.

Based on the facts developed during the discovery completed in this lawsuit, the Parties have determined that it is in their best interests to compromise and resolve this matter without protracted litigation and have conducted good faith negotiations resulting in the proposed Consent Decree (attached as **Exhibit 1**).  As agreed in the Consent Decree, the Parties hereby respectfully move this Court to enter the Consent Decree, confirm the QTA Disclaimer (attached as **Exhibit 2**), and enter final judgment dismissing the State's claim against the United States with prejudice.

II.     Summary of the Consent Decree

The Consent Decree contains all of the terms that comprise the settlement.  The basic elements include disclaimers of interest in which both Parties disclaim some interest.  The State disclaims its interest in two of the four spurs of the Chicken-to-Franklin Trail (the Kettle George Spur and the Landing Strip Spur), which total about seven miles.  *See* Consent Decree ¶ 7, 24.  The United States disclaims its interest in a non-exclusive right-of-way in the Hutchinson Creek Trail, Montana Creek Trail, and the other two spurs of the Chicken-to-Franklin Trail (the Franklin Creek Spur and the Southern Chicken-to-Franklin Spur), which total approximately five miles.  *Id.* ¶ 8, 32.  Additionally, the State will record the Consent Decree and the QTA Disclaimer and any

3

Case 4:13-cv-00008-RRB     Document 370     Filed 11/20/24     Page 3 of 10

other relevant documents at the Fairbanks Recording District of the State Recorder's Office, and the BLM will update its official land records to reflect the information set forth in these documents. *Id.* ¶ 43.

The Parties also agree to maintain the trails in their current "primitive, unpaved condition" and to not widen the trails beyond the current travel surface or relocate them beyond a 60-foot width (30 feet on either side of the centerline). *Id.* ¶ 15. Under the Consent Decree, the State may conduct "routine maintenance" on the trails and must obtain the BLM's approval for any activities on the trails that are beyond "routine maintenance"; and the BLM and the State will mutually cooperate in seeking to prevent motorized use of the trails from occurring outside the trails' alignments or past their termini, other than the motorized use allowed by the BLM. *Id.* ¶ 15, 16. The placement of the trails is based on the BLM's collection of the Global Positioning System center line coordinates of each of the three trails, but the BLM may adjust the descriptions of the locations and alignments based on surveys conducted within five years of the Consent Decree's effective date, which is 60 business days after the Court enters it without conditions, confirms the QTA Disclaimer, and enters a final judgment dismissing the State's claim against the United States. *Id.* ¶ 23, 29, 31.

III. <u>Standard of Review</u>

A consent decree is a negotiated agreement that is entered as a judgment of the court. *See United States v. Oregon*, 913 F.2d 576, 580 (9th Cir. 1990). It is the product of negotiation and compromise. *Id.* (citing *United States v. Armour & Co.*, 402 U.S. 673, 681-82 (1971)). A district court reviews a consent decree to determine whether the

4

decree is "fundamentally fair, adequate and reasonable." *Oregon,* 913 F.2d at 580. The district court's role in reviewing the essentially private agreement among the parties is "limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties." *Id.* (citing *Officers for Justice v. Civil Service Commission of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982)). Generally, federal courts favor settlement. *See e.g., Stone v. City & County of San Francisco*, 968 F.2d 850, 861 n.20 (9th Cir. 1992) (recognizing "[t]he strong policy encouraging settlement of cases"); *Franklin v. Kaypro Corp.*, 884 F.2d 1222, 1225 (9th Cir. 1989) ("In general, the policy of federal courts is to promote settlement before trial.").

IV. <u>The Consent Decree is Fair, Adequate, and Reasonable and is Not Illegal, A Product of Collusion, or Against the Public Interest</u>

The Court should enter the Consent Decree because it is procedurally and substantially fair, adequate, and reasonable as explained in Section A below. The Consent Decree was vigorously negotiated for years and is factually and reasonably based on the historical aims of the statutes that give rise to this suit. Additionally, as explained in Section B below, the Consent Decree upholds the objectives of the applicable statutes and is in the public's interest.

   A. <u>The Consent Decree is Fair, Adequate, and Reasonable</u>

Before approving a consent decree, a district court must be satisfied that it is at least "fundamentally fair, adequate and reasonable." *Oregon,* 913 F.2d at 580. If the decree is the product of "good faith, arms-length negotiations," it is "presumptively

5

valid." *United States v. Chevron,* 380 F. Supp. 2d 1104, 1110–11 (N.D. Cal. 2005) (quoting *Oregon*, 913 F.2d at 581). The Court must evaluate both the procedural and substantive fairness of the consent decree. *Chevron*, 380 F. Supp. 2d at 1111. In addition, while a consent decree "must conform to applicable laws . . . [it] need not impose all the obligations authorized by law." *Oregon,* 913 F.2d at 580.

Here, the Parties engaged in good faith, arms-length negotiations, lasting three years and informed by fact discovery. After the Parties negotiated the terms of the Consent Decree fully, the U.S. Department of the Interior, the U.S. Department of Justice, and the State's agencies approved it. For all these reasons, the Consent Decree is procedurally fair. *See U.S. v. Pacific Gas & Elec*. 776 F. Supp. 2d 1007, 1025 (N.D. Cal. 2011) (stating that a consent decree is procedurally fair when the negotiation process was "fair and full of adversarial vigor"). The Consent Decree is substantively fair because the Parties disclaim interests in comparable measurement: the United States disclaims its interest in rights-of-way for two of the trails and a portion of the third, for a total of about 5 miles, and the State disclaims its interest in roughly 7 miles total. *See United States v. Montrose*, 50 F.3d 741, 746 (9th Cir. 1995) (holding that a consent decree with a settlement figure of 45 million was substantively fair because the parties did not act arbitrarily in arriving at that figure, and the government explained "in detail" the methodology used to arrive at that decision); *United States v. Pacific Gas & Elec.*, 776 F. Supp. 2d 1007, 1026 (N.D. Cal. 2011) (finding a consent decree imposing emission limits substantively fair because the limits represent the most current and stringent pollution control technologies). Additionally, the trails would be recognized with limited width

6

and scope and remain in their primitive condition, while also clarifying and confirming important facets of intergovernmental relationships concerning these roads in beneficial ways. For all of these reasons, the Consent Decree is fair.

For a consent decree to be adequate and reasonable, it must represent a "reasonable factual and legal determination." *Oregon,* 913 F.2d at 581 (internal citations omitted). Relevant here, Alaska law allows a right-of-way under R.S. 2477 through public use. *Alaska Dep't of Natural Resources v. United States*, 816 F.3d 580, 583-84 (9th Cir. 2016). R.S. 2477 focuses on only public lands. *See Humboldt Cty. v. United States*, 684 F.2d 1276, 1281 (9th Cir. 1982). "Such lands are those subject to sale or other disposal under general laws, excluding those to which any claims or rights of others have attached." *Id.*; *cf. Columbia Basin Land Prot. Ass'n v. Schlesinger*, 643 F.2d 585, 602 (9th Cir. 1981) ("We thus hold that privately held lands in which the United States has retained mineral rights are not subject to FLPMA's right-of-way requirements.").

Here, the Parties assessed the factual record developed during discovery and applied the R.S. 2477 objectives to the historical evidence in arriving at the terms of the Consent Decree. The Parties examined the existing dimensions and lengths of the agreed upon rights-of-way and reached a stipulated agreement as to the scope of each right-of-way as part of the Consent Decree.

In short, the Consent Decree is procedurally and substantively fair because the Parties negotiated reasonable terms. The Consent Decree is also adequate and reasonable because the terms are based on the objectives of R.S. 2477 and factually supported by evidence disclosed during discovery. The Court should enter the Consent Decree.

## B. The Consent Decree is Not Illegal, a Product of Collusion, or Against the Public Interest

The Consent Decree is lawful because it neither authorizes any violations of law nor is a product of collusion. Courts have held that public officials of the United States are entitled to a presumption that their actions and decisions are not illegal or a product of collusion. *See United States v. McKinley Cnty.*, 941 F. Supp. 1062, 1066 (D.N.M 1996) (citing *United States v. Chem. Found. Inc.*, 272 U.S. 1, 14-15 (1926)). Nothing in the record suggests a deviation from this presumption.

The Consent Decree is also not against the public interest. Indeed, the Consent Decree upholds statutory objectives. *See e.g.*, *United States v. Telluride Co.*, 849 F. Supp. 1400, 1402 (D. Colo. 1994) (considering "whether the consent decree is in the public interest and upholds the objectives of the [relevant statute]."). The federal statute on which jurisdiction is based here, the QTA, provides that the United States may disclaim its interest, and dispose of the litigation over that interest, in appropriate cases. *See* 28 U.S.C. § 2409a(e). In addition, the Consent Decree furthers the WSRA by preserving BLM's authority over the Wild and Scenic River Corridor. In particular, the WSRA created a National Wild and Scenic River System to protect certain remarkable river systems of the United States, such as the Fortymile River Corridor. *See* 16 U.S.C. §§ 1271-87. The BLM administers the wild and scenic river system to protect and enhance the free-flowing condition, water quality, and outstandingly remarkable values of the rivers and river segments designated under the WSRA. *Id*. The Consent Decree's provisions on routine maintenance and placements of the trails ensures that the public can

continue to enjoy the qualities meant to be protected under the WSRA. *See e.g. id.* § 1283(a).

Finally, the Consent Decree is in the public interest because it resolves the controversy without expensive and prolonged litigation and with due regard for the underlying federal and non-federal property interests. Therefore, the Court should enter the Consent Decree.

V. <u>Quiet Title Act Disclaimer</u>

Under the QTA, actions will lie only with respect to "disputed title to real property in which the United States claims an interest." 28 U.S.C. § 2409a(a). To the extent the United States does not claim an interest adverse to that claimed by the State, the QTA specifies that the United States may disclaim that purported interest and thereby dispose of the litigation over that interest. 28 U.S.C. § 2409a(e). Through this Joint Motion, the Parties now seek judicial confirmation of the QTA Disclaimer of Interest.

Judicial confirmation of a disclaimer is a largely formal or ministerial action. *See Leisnoi v. United States*, 313 F.3d 1181, 1184 & n.5 (9th Cir. 2002); *Lee v. United States*, 809 F.2d 1406, 1409-1410 (9th Cir. 1987), *cert. denied, sub nom., Lee v. Eklutna, Inc.*, 484 U.S. 1041 (1988). However, a court may reject the disclaimer where it finds it has not been made in "good faith." *Lee*, 809 F.2d at 1409-1410. For the same reasons that the Consent Decree is fair, adequate, and reasonable, the QTA Disclaimer of Interest is lawful. The Court should therefore confirm the QTA Disclaimer of Interest.

VI. <u>Conclusion</u>

The Consent Decree is procedurally and substantively fair, adequate and

9

Case 4:13-cv-00008-RRB   Document 370   Filed 11/20/24   Page 9 of 10

reasonable, and furthers the purposes of R.S. 2477. The Consent Decree is not illegal, a product of collusion, or against the public interest. Likewise, the QTA Disclaimer of Interest is lawful and made in good faith. Accordingly, the Parties respectfully request that this Court enter the Consent Decree, confirm the QTA Disclaimer, and enter final judgment dismissing the State's claim against the United States with prejudice.

Respectfully submitted this 20th day of November 2024,

TREG R. TAYLOR
Attorney General
State of Alaska

*/s/Jessie Alloway (with permission)*
JESSICA M. ALLOWAY
AK Bar No. 1205045
Senior Assistant Attorney General
Department of Law
1031 W. 4th Avenue, Suite 200
Anchorage, AK 99501
Telephone: (907) 269-5232
Email: jessie.alloway@alaska.gov

*Attorney for State of Alaska*

TODD KIM
Assistant Attorney General
United States Department of Justice
Environment & Natural Resources Division

*/s/ Krystal-Rose Perez*
HAYLEY A. CARPENTER
KRYSTAL-ROSE PEREZ
Trial Attorneys
Natural Resources Section
150 M Street NE
Washington, DC 20002
Tel: (202) 305-0242 (Carpenter)
    (202) 305-0486 (Perez)
Email: hayley.carpenter@usdoj.gov
       krystal-rose.perez@usdoj.gov

*Attorneys for the United States*